## WILEY ADAMS v. THE STATE.

NEW TRIAL.—In a trial for theft the only evidence which tended to incriminate the defendant was the testimony of a State's witness who, prior to the trial, assured the defendant and his counsel that he knew nothing whatever about the case and nothing inculpatory of the defendant.   In view of the deceit thus practised on the defendant and the unreliable character of the evidence against him, this court sets aside the conviction and awards a new trial.

APPEAL from the District Court of Williamson.   Tried below before the Hon. W. A. BLACKBURN.

The opinion discloses the case.   In the defendant's motion for a new trial it is alleged that his counsel ineffectually asked the court for a short postponement of the trial, to enable the defense to send for witnesses who would contradict the principal witness for the State.   The

ruling of the court, however, on the application for a postponement does not appear to have been excepted to.

A term of two years in the penitentiary was the punishment assessed against the appellant.

*Makemson, Fisher & Price*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WINKLER, J. We are of opinion that the testimony upon which the appellant was convicted, as we find it embodied in the statement of facts, is not of that convincing character which ought to deprive a citizen of his liberty and render him infamous among his fellows for the balance of his natural life.

The alleged owner of the animal alleged to have been stolen by the appellant, and who testified on the trial, does not connect the defendant in any manner with the animal otherwise than to say, "he never gave this defendant or any one else his consent to kill the yearling." One other witness was introduced on behalf of the prosecution. This witness testified that at a certain place and time he saw the defendant, Wiley Adams, and his oldest son killing and skinning a dun, pied heifer yearling, branded N. H. P., belonging to James Pratt; that he knew the animal by its flesh-marks, and lived at the time but a few hundred yards from defendant and James Pratt. This witness on cross-examination says he did tell defendant at the January term, 1880, of this court, in the presence of W. K. Makemson, A. S. Fisher, and Green Adams, that he, witness, knew nothing about this case, that he did not see the defendant at any time have the yearling in possession, never saw him kill the yearling, and never saw him have anything to do with it in any way. He further said he told the defendant that he could not tell him what he, witness, would swear to, because he was under oath by the grand jury, and said he was drinking at the time. The defendant introduced the three persons

to whom the last-mentioned witness had made the statements according to his cross-examination as above set out, who all say that he, the State's witness, did tell the defendant at the January term, 1880, of this court, that he never saw the defendant having anything to do with Pratt's yearling, never saw him kill it or have it in his possession; that he said he was not before the grand jury, and that he did not know why they had not found him. This is the substance of the testimony so far as it goes to connect the defendant with the theft.

Whilst it is true a defendant accused of crime ought not to rely upon the statements of a witness made to him out of court before the trial as to what he would testify to at the trial *(Fagan* v. *State,* 3 Texas Ct. App. 400), still we are of opinion that it was not improper for the defendant to endeavor, in preparing to make his defense, to ascertain, if he could do so by legitimate means, what the evidence on the part of the prosecution against him would be; and, whilst the witness would be under no sort of obligation to disclose beforehand what his testimony would be on the trial, yet we imagine but few instances will be found where the witness would be warranted in making false representations to one accused of crime, in order to entrap him, and, by inducing him to believe that there was no evidence against him, cause him to relax his efforts in preparing for his defense, and then go on the witness-stand and swear directly to the reverse of what he had told the defendant prior to the trial. We do not wish to be understood as holding that there are not cases where a necessity exists for a resort to artifice to induce a confession and the like, but it can seldom become necessary to resort to the statement of an untruth or, what is nearly the same thing, the wilful suppression of the truth, in order to procure a conviction. It is true the jury were the judges of the facts. In all cases they are the exclusive judges of the facts proved and of the weight

to be given to the testimony, except in the instances provided for specially in the Code of Procedure, art. 728. And in the present case the jury were so instructed by the court, and still they convicted the defendant under this testimony, and the court refused a new trial. It is one of the modes recognized by the law by which to impeach the credibility of a witness, to show that he has made statements out of court contrary to what he has testified to on the trial, the attention of the witness having been called particularly to the supposed contradictory statements, as to time and place, the persons to whom made, and the like. The whole of the testimony adduced goes generally to the jury who are authorized to pass upon it, and under ordinary circumstances this court would not disturb a verdict where there is merely a weight in the testimony, or because of a preponderance of testimony on one side or the other of the controversy, provided always there is any legal evidence upon which a verdict can rest. In this case, however, the testimony which tends in any way to connect the defendant with the crime with which he is charged comes in such a questionable shape as we find it in the record before us, that we do not deem it sufficient to base a conviction upon, and thus to stand as a precedent.

There was a feeble effort at obtaining a new trial on the ground of newly discovered evidence, which the court below very properly overruled. *White* v. *State, ante,* p. 381, and authorities there cited. The indictment is deemed sufficient. There is no other error perceived, but, because there is no testimony not of a very questionable character, and but little of that which goes to establish the guilt of the defendant, the judgment ought to be reversed and the case remanded for a new trial; and it is so ordered.

*Reversed and remanded.*